James WILLIAMS, Plaintiff–Appellant,

v.

M.D. Lester N WRIGHT, Assistant Commissioner/Chief Medical Officer, D.O.C.S., Dr. Morgan, F.H.S.D., Groveland Correctional Facility, D.O.C.S., Dr. Howard, F.H.S.D. Groveland Correctional Facility, D.O.C.S., Defendants–Appellees,

Glenn S. Goord, Commissioner, Department of Correctional Services, Jane/ John Doe, Position Unknown D.O.C.S., Dr. Takos, Facility Health Services Director, Attica Correctional Facility, D.O.C.S., Defendants.

No. 05–0257–PR.

United States Court of Appeals, Second Circuit.

Jan. 12, 2006.

Joseph A. Maria, White Plains, New York, for Appellant.

Owen Demuth, Assistant Solicitor General (Daniel M. Smirlock, Deputy Solicitor General, on the brief), for Eliot Spitzer, Attorney General of the State of New York, Albany, New York, for Appellees.

PRESENT: Honorable AMALYA L. KEARSE, Honorable REENA RAGGI, Circuit Judges. and Honorable JANE A. RESTANI,[1] Chief Judge, U.S. Court of Int'l Trade.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court, entered on December 3, 2004, is hereby AFFIRMED.

Plaintiff James Williams appeals from an award of summary judgment in favor of defendants, Doctors Wright, Morgan, and Howard, physicians employed by the New York State Department of Correctional Services ("DOCS"), on Williams's claims that the doctors' failure to arrange for him to have surgery to address a degenerative hip condition violated his constitutional rights under the Eighth Amendment and the Equal Protection Clause.[2] We review a district court's grant of summary judgment de novo, and we will affirm only if the evidence adduced, viewed in the light most favorable to the plaintiff, indicates no dispute of material fact warranting trial and shows the defendants' entitlement to judgment as a matter of law. See, e.g., Peck v. Baldwinsville Cent. Sch. Dist., 426 F.3d 617, 625 (2d Cir.2005). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

1. *The Eighth Amendment Claim*

To demonstrate that defendants' allegedly inadequate medical care violated the Eighth Amendment's proscription on cruel and unusual punishment, Williams must adduce evidence showing defendants' "deliberate indifference to [his] serious medical needs...." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To carry this burden, Williams must demonstrate both (1) the objective seriousness of his medical condition, *i.e.*, that he was suffering from "a condition of urgency, [or] one that may produce death, degeneration, or extreme pain," *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994) (internal quotation marks omitted), and (2) defendants' subjectively culpable mind set in treating or failing to treat this condition, *i.e.*, defendants' knowledge of and disregard for an excessive risk of harm to the inmate, *see Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998).

The first element is not at issue in this case. The parties agree that Williams's

---

1. The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

2. Initially, Williams also sued three other defendants, DOCS Commissioner Glenn S. Goord; Dr. Takos, another DOCS physician; and a DOCS employee identified only as "Jane/John Doe." On October 18, 2000, the district court sua sponte dismissed the complaint against these defendants, an order not challenged on this appeal.

degenerative hip condition constituted an objectively serious medical condition for purposes of Eighth Amendment analysis. As for the second element, Williams submits that the district court erred in concluding that, as a matter of law, he failed to demonstrate defendants' intentional disregard for this serious condition. We disagree.

 Williams essentially contends that defendants' deliberate indifference to his medical condition was manifested by their delay in arranging for him to have hip replacement surgery, with the result that, by the time he was paroled, no such surgery had been performed and his hip condition had degenerated.[3] In fact, the record does not support an inference that the cited delay was attributable to defendants' deliberate indifference to Williams's condition. Williams was seen in orthopedic consultation by a doctor who recommended hip replacement surgery. He was then scheduled to get a second opinion concerning the proposed hip replacement. The delay appears due, at least in the first instance, to Williams's insistence that any surgical procedure be performed at St. Francis Hospital, the downstate facility where he had received hip treatment before incarceration.[4] Because that demand would have required Williams's transfer to a different penal facility, the matter was reviewed by defendant Wright—not any of the other appellee doctors—who denied transfer, concluding that it was not medically necessary for Williams to be treated at St. Francis. Williams has adduced no evidence to the contrary. These circumstances do not evidence deliberate indifference. The law is well established that a "prisoner's right is to medical care—not the type or scope of medical care which he personally desires." *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867–68 (2d Cir.1970); *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986) ("The essential test is one of medical necessity and not one simply of desirability.") (internal quotation marks omitted).

When Williams was provided with an orthopedic examination by a surgeon at nearby Strong Memorial Hospital in Rochester, New York, that doctor recommended against surgery because complications from infection could, in fact, worsen his condition. The doctor reported to DOCS that, if Williams wished to pursue surgery despite this risk, he should be referred to his former orthopedist. To the extent Williams disagrees with the Strong Hospital orthopedist's surgical assessment, he cannot rely on a disputed "matter for medical judgment" to establish deliberate indifference by the appellee doctors. *See Estelle v. Gamble*, 429 U.S. at 107, 97 S.Ct. 285; *Hernandez v. Keane*, 341 F.3d 137, 146–47 (2d Cir.2003).

It does appear, however, that DOCS neglected for several months to act on the suggestion that Williams be referred for consultation with his former treating orthopedists. To the extent the appellee defendants are in any way responsible for this delay—which is not clear from the record—the conduct, at worst, demonstrates negligence, not deliberate indifference and, thus, cannot support an Eighth Amendment claim. *See Hathaway v.*

---

**3.** Because Williams violated the conditions of his parole, he was reincarcerated, during which time, in December 2003, he underwent hip replacement surgery.

**4.** DOCS officials later discovered that Williams had received treatment for his hip ailment at both Kings County Hospital and St. Francis Hospital. At the time of Williams's initial request for treatment, DOCS believed that Williams had undergone treatment only at St. Francis Hospital.

*Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (observing that "negligent malpractice do[es] not state a claim of deliberate indifference"); *see also Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. 285 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

When DOCS did, in fact, attempt to arrange for Williams to be seen by a former treating physician, it ascertained that neither Kings County Hospital (where Williams had received hip surgery as a child) nor St. Francis Hospital (where a hip replacement had more recently been recommended but deferred because of Williams's lack of medical insurance) could accommodate a prison inmate. Arrangements were then made for Williams to have a surgical consultation with another orthopedist, who agreed to operate but who advised Williams that a "perfect result" was unlikely "because of the shortening and deformity of the right hip." Although Williams suggests that this prognosis was a result of the defendants' referral delay, he points to no record evidence to support that conclusory assertion, *see Davis v. New York,* 316 F.3d 93, 100 (2d Cir.2002), or to demonstrate that the omission constituted more than negligence.

The parties do not dispute that, throughout the period in question, Williams suffered real pain from his degenerative hip condition. Nevertheless, the record evidence shows that Williams was routinely seen by doctors within and outside the New York prison system for this condition, generally with a view toward surgery. Throughout, including during the time that Williams refused surgical treatment at any facility other than St. Francis Hospital, and continuing through his parole, DOCS provided him with various medications, a back brace, and several prison accommodations to minimize the distress of his condition. Under these circumstances, even when viewed in the light most favorable to Williams, the record will not support a finding of deliberate indifference. Accordingly, the district court correctly entered summary judgment in favor of the appellee doctors on Williams's Eighth Amendment claim.

### 2. *The Equal Protection Claim*

■ Williams asserts that the district court erred in dismissing his equal protection claim because, "[u]nless it is standard procedure for the Defendants to ignore the medical recommendations of the doctors to which it refers inmates," it necessarily follows that he must have been treated differently than other similarly situated inmates. Plaintiff provides no specific facts to support this conclusory allegation. *Davis v. New York,* 316 F.3d at 100; *see also* Fed.R.Civ.P. 56(e). As this court recently ruled, class-of-one claims require a plaintiff to adduce evidence showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005). Because Williams fails to offer such evidence, the district court correctly granted judgment in favor of the appellee doctors on his equal protection claim.

For the reasons stated, the December 3, 2004 judgment in favor of defendants-appellees is hereby AFFIRMED.