**Lucia GUARINO, Plaintiff–Appellant,**

v.

**ST. JOHN FISHER COLLEGE, Defendant–Appellee.**

Nos. 08–1531–cv(L), 08–1870–cv(con).

United States Court of Appeals, Second Circuit.

April 8, 2009.

Christina A. Agola, Attorneys and Counselors at Law, PLLC, Rochester, NY, for Plaintiff–Appellant.

Marion Blankopf, Nixon Peabody LLP, Rochester, NY, for Defendant–Appellee.

PRESENT: JOSÉ A. CABRANES, PETER W. HALL, Circuit Judges, ROBERT W. SWEET, District Judge.[*]

### SUMMARY ORDER

Plaintiff-appellant Lucia Guarino ("plaintiff" or "Guarino") appeals from a March 31, 2008 judgment entered by the United States District Court for the Western District of New York, granting summary judgment in favor of defendant St. John Fisher College ("Fisher" or "the college"), and dismissing plaintiff's hostile work environment and wrongful retaliation claims brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York Human Rights Law, N.Y. Exec. Law § 296 *et seq.* We assume the parties' familiarity with the factual and procedural history of the case, though we revisit key portions of that history here.

Plaintiff is currently a tenured faculty member at Fisher in Pittsford, New York. She first began working for the college as a part-time adjunct professor in 1998. Dr. Carol Freeman ("Freeman") is a tenured faculty member at Fisher. Since 2001, Freeman has served as the Chair of the Department of Mathematical and Computing Sciences ("MCS Department"). As Chair, Freeman has been responsible for, among other things, directing the graduate program within the MCS Department known as the Graduate Mathematics, Science, Technology education program ("GMST"). In 1998, Freeman invited plaintiff to apply for an adjunct teaching position in GMST, which plaintiff received and accepted. Two years later, Freeman

recommended that plaintiff be offered a full-time professorship—a position she was subsequently offered and accepted.

Plaintiff alleges that from the first semester of September 2000 through the summer of 2004, she was subjected to a sex-based hostile work environment created by Freeman. Plaintiff asserts that Freeman was "obsessed" with her and "had formed an unusual dependency" on her. Appellant's Br. at 8 (internal quotation marks omitted). According to plaintiff, Freeman sought her out continuously during this period, and would say things such as "I need you, where would I be without you. Everything would just fall apart. You are amazing, you are great, you are incredible." J.A. at 679 (Deposition of Guarino). Plaintiff alleges that during this time, she made complaints about Freeman's behavior to several of her supervisors at Fisher. Specifically, plaintiff states that in 2002, she told then-Acting Provost Donald Bain that she was "involved in an unhealthy relationship" with Freeman and that Bain responded only that he would "look into that." *Id.* at 740–41. Additionally, she complained to David Pate, the Dean of the undergraduate program, and asked that he move her office, *see id.* at 737, though she was never moved.

In May 2004, plaintiff informed Freeman that she planned to resign from GMST and apply for a position in the college's School of Education. She officially resigned in July 2004 and was hired by the School of Education in August 2004, at which time she became the Chair of the Department of Adolescent Education. Plaintiff has not met with Freeman since that time, and has not been in communica-

---

[*] The Honorable Robert W. Sweet, of the United States District Court for the Southern District of New York, sitting by designation.

tion with Freeman since August 2005. However, between 2004 and 2005, plaintiff claims that professors in her former department stated that they were concerned about being seen with her because Dr. Freeman's husband, another professor at Fisher, would become upset with them. Plaintiff also claims that Freeman resigned from a grant that they had been co-administrating, and then refused to include her department in the grant after plaintiff became the sole-administrator.

In May 2006, plaintiff brought the instant action, claiming (1) that Freeman's actions created a sex-based hostile work environment, and (2) that she suffered retaliation for complaining to her supervisors about Freeman's behavior in that, *inter alia,* she was "compelled" to resign from the GMST program, Freeman's decision to not include her department in the grant plaintiff was administering was "humiliating," and she suffered alienation from her former colleagues. Appellant's Br. at 49. In a March 31, 2008 judgment, the District Court granted summary judgment for Fisher. Plaintiff filed a timely notice of appeal.

We review *de novo* an order granting summary judgment. *See, e.g., Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). "Summary judgment is not appropriate where a review of the record reveals sufficient evidence for a rational trier of fact to find in the plaintiff's favor." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002). But "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion." *Davis v. New York,* 316 F.3d 93, 100 (2d Cir.2002). Finally, we note that, "[c]laims brought under Section 296 of the New York Executive Law, New York's Human Rights Law, can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII." *Gallagher v. Delaney,* 139 F.3d 338, 345 (2d Cir.1998).

We first consider plaintiff's hostile work environment claim. To state a Title VII claim based on a sex-based hostile work environment, a plaintiff must plead facts that show that the complained of conduct: "(1) is objectively severe or pervasive-that is, ... creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment *because of the plaintiff's sex."* *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (quotation marks omitted) (emphasis added). As we have previously stated, "it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002). Accordingly, "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination because of sex."* *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (second emphasis added; internal quotation marks and alterations omitted).

█ Based upon our review of the record, we conclude that although Freeman may have been acting in an unwelcome and inappropriate manner, no reasonable fact-finder could conclude that her behavior occurred because of her sex. Indeed, when asked by defense counsel whether plaintiff was claiming that Freeman "treated [her] badly because [she] was a wom-

an," plaintiff answered "no." J.A. at 78.[1] Accordingly, we conclude that plaintiff has provided no evidence that Freeman's actions were based on sex, and in turn, conclude that such actions did not create a hostile work environment as proscribed by Title VII.

 Next, we consider plaintiff's claim of retaliation. In order to establish a claim for retaliation, an employee must demonstrate that (1) she was engaged in protected activity; (2) the employer was aware of the employees's participation in the protected activity; (3) the employer took action that a reasonable employee would have found materially adverse; and (4) a causal connection existed between the employee's protected activity and the adverse action taken by the employer. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–206 (2d Cir. 2006). The record evidence shows that Fisher granted plaintiff's request to transfer to the School of Education in 2004, made her chair of her department in 2004, provided her with what plaintiff herself described as a "very comfortable" work environment in the School of Education, *see* J.A. at 216, and awarded her tenure in 2006. Based upon our review of the record, we conclude that the district court did not err when it dismissed plaintiff's retaliation claim because plaintiff failed to demonstrate that she suffered any adverse employment action. *Id.; see also Fairbrother*

*v. Morrison*, 412 F.3d 39, 55 n. 8 (2d Cir.2005).

### CONCLUSION

For the forgoing reasons, the judgment of the District Court is **AFFIRMED.**

---

1. Specifically, plaintiff and defense counsel had the following exchange during plaintiff's deposition:

    Defense Counsel: Did [Freeman] ever make any sexual remarks to you?
    . . .
    Plaintiff: No.
    Defense Counsel: Did she ever make a pass at you?
    . . .
    Plaintiff: No.
    Defense Counsel: Did she ever try to kiss you?

    . . .
    Plaintiff: No.
    Defense Counsel: Did she ever put her hands on you?
    . . .
    Plaintiff: No.
    . . .
    Defense Counsel: Are you claiming in this lawsuit that Carol treated you badly because you are a woman?
    Plaintiff: No.
    J.A. at 76–78.