25-1034-cv
*Kolonziaa v. Allied Cmty. Res., Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of March, two thousand twenty-six.

PRESENT:
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges*.

---

ISAAC KOLONZIAA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, MICHELE MAY-JAVEED, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
> *Plaintiffs-Appellants*,

v.                                                           25-1034-cv

ALLIED COMMUNITY RESOURCES, INC., ALLIED COMMUNITY SERVICES, INC.,
> *Defendants-Appellees*,

DEPARTMENT OF SOCIAL SERVICES FOR THE STATE OF CONNECTICUT,
> *Defendant*.[*]

---

FOR PLAINTIFFS-APPELLANTS:      NITOR V. EGBARIN, Law Office of Nitor V. Egbarin, LLC, Hartford, CT.

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

FOR DEFENDANTS-APPELLEES:               BRIAN O'DONNELL, Reid and Riege, P.C., Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Isaac Kolonziaa and Michele May-Javeed appeal from the district court's grant of summary judgment to Defendants-Appellees Allied Community Resources, Inc. ("Allied Resources") and Allied Community Services, Inc. ("Allied Services") on their claims for violations of the minimum and overtime wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.* Plaintiffs seek to represent a putative class and collective of personal care assistants who provided in-home care to "waiver participants," elderly and infirm individuals eligible for care under the Connecticut Department of Social Services ("DSS") Medicaid Waiver Programs.[1] Allied Resources contracted with DSS to provide services for the Medicaid Waiver Programs, including payroll processing for caregivers. Allied Services is Allied Resources' parent corporation and manages residential programs for disabled persons. The district court granted summary judgment to Defendants because it concluded "no reasonable jury could find that Allied Resources or Allied Services was the plaintiffs' employer under the FLSA or the CMWA."

---

[1] "Because FLSA and state law claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under [Federal] Rule [of Civil Procedure] 23 to pursue the state law claims as a class action under the district court's supplemental jurisdiction." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2010) (cleaned up). Here, Plaintiffs bring a putative FLSA collective action under 29 U.S.C. § 216(b) and a putative CMWA Rule 23 class action under the district court's supplemental jurisdiction.

2

Special App'x at 6.   We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

"We review *de novo* the District Court's grant of summary judgment, taking the facts in the light most favorable to the non-moving party.   Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   *1077 Madison St., LLC v. Daniels*, 954 F.3d 460, 463 (2d Cir. 2020) (cleaned up).   A "genuine dispute as to a material fact precludes summary judgment where the evidence is such that a reasonable jury could decide in the non-movant's favor."   *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 418 (2d Cir. 2025) (quotation marks omitted).

## I.    Allied Resources' FLSA Employer Status

Plaintiffs contend there is a genuine dispute as to Allied Resources' FLSA employer status under the factors set forth in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). We disagree.

The "determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts."   *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quotation marks omitted).   We make this determination "on a case-by-case basis by review of the totality of the circumstances." *Id.* at 141-42.   The "overarching concern is whether the alleged employer possessed the power to control the workers in question."   *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).   Although "mechanical application of any set of factors is to be avoided," we have used the "*Carter* factors" to "examine the degree of formal control exercised over a worker," "specifically, whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined

3

the rate and method of payment, and (4) maintained employment records." *Barfield*, 537 F.3d at 142-43 (quotation marks omitted). "No one of the four factors standing alone is dispositive." *Herman*, 172 F.3d at 139.

Plaintiffs identify no evidence creating a triable issue as to whether Allied Resources had the power to control their employment under the first three *Carter* factors.

### a. Power To Hire and Fire

The record discloses no evidence from which a reasonable jury could find that Allied Resources had the power to hire and fire Plaintiffs.

Plaintiffs first point to the "New Employee Application Checklist" that Allied Resources prepared for each Plaintiff. The checklist identifies the new-employee forms "signed by" each Plaintiff, highlights the missing forms, includes a date on the line for "Application Complete - Date of Hire," specifies the Plaintiff's "Service(s)" and "Payrate," marks a box labeled "Employment Authorized," lists the initials of the person who "[p]rocessed" the "[a]pplication," and bears a timestamped mark with the word "Approved," indicating "Director/Manager Approval." App'x at 264, 267 (capitalization omitted). But as the district court explained, the "mere fact . . . that Allied [Resources] performed the ministerial task of gathering and processing the plaintiffs' new hire materials[] is insufficient to show that Allied [Resources] made hiring decisions." Special App'x at 8. The checklists thus are not evidence from which a reasonable jury could conclude that Allied Resources hired Plaintiffs.

Plaintiffs also invoke the DSS Provider Agreement that each Plaintiff signed. But as the district court noted, Allied Resources' "power to hire and fire the plaintiffs cannot flow from a contract to which Allied [Resources] was not a party. The ability to hire and fire must instead arise from [Allied Resources'] contract with DSS." *Id.* at 9.

4

### b. Supervision and Control

The record does not contain evidence from which a reasonable jury could find that Allied Resources supervised and controlled Plaintiffs' work schedules or conditions of employment. Plaintiffs argue that (1) Allied Resources trained them, (2) they reported their work on timesheets sent to Allied Resources, (3) they used Allied Resources' Electronic Visit Verification system to log their hours, and (4) Allied Resources conducted on-site reviews of personal care assistants as required in the DSS contract. But none of this evidence creates a triable issue as to supervision and control.[2] First, this evidence does not indicate that Allied Resources controlled Plaintiffs' work schedules or conditions of employment.

Second, the evidence regarding training does not indicate that Allied Resources supervised Plaintiffs. Kolonziaa does not claim Allied Resources trained him. May-Javeed states that "a gentleman from Allied Resources called" her to explain "how to complete the timesheet, the safety protection, proper fire extinguisher." App'x at 282. She also states that when she called Allied Resources to report sleep interruptions, the "gentleman from Allied told [her] to go to Allied's website to look [for] videos for training and study." *Id.* at 283. These statements do not constitute evidence that Allied Resources supervised her work schedule or conditions of employment.

Third, Allied Resources' awareness of Plaintiffs' work schedules and review of their timesheets do not amount to supervision. The DSS contract requires Allied Resources to "[r]eview timesheets for mathematical accuracy and to ensure that the services that were provided have been authorized by [DSS] as documented in the Participant's Plan or Budget." Supp. App'x

---

[2] In his interrogatory response, Kolonziaa states that he was "supervised by a case manager and Patricia Harris, an employee of Allied." App'x at 272. But this conclusory statement does not create a genuine dispute as to supervision. *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("[R]eliance upon conclusory statements . . . is not sufficient to defeat a summary judgment motion.").

at 17. In his affidavit, Allied Resources' Chief Executive Officer ("CEO") avers that the company "did not evaluate the accuracy of the information on the timesheets" "[o]ther than to carry out its contractual responsibility" to implement a DSS-required "program to spot check timesheets for fraud protection." App'x at 79. Plaintiffs point to no evidence suggesting Allied Resources reviewed their timesheets for more than these limited purposes.

Finally, the DSS contract provision regarding on-site reviews does not create a genuine dispute as to supervision. The contract requires Allied Resources to perform "On-Site Reviews of 5% of Providers." Supp. App'x at 26. "These reviews, at a minimum, are to evaluate agencies' policies, practices and procedures as it pertains to providing services under [] each respective program." *Id.* The contract does not describe these on-site reviews as a means of monitoring caregivers' work or evaluating their performance. Plaintiffs, moreover, do not claim they were subject to on-site reviews.

### c. Rate and Method of Payment

Plaintiffs identify no evidence that Allied Resources determined their pay rates or their method of payment. In their interrogatory responses, Plaintiffs state that Allied Resources paid them a daily amount from the "per diem rate" it received from DSS. App'x at 272, 284. But the record indicates that Plaintiffs' daily pay rates were set by DSS, not Allied Resources. The DSS contract provides that DSS has "authorized" an "itemized budget for each Participant" and that Allied Resources must "obtain written approval from [DSS] prior to paying any line item that exceeds the authorized amount in the [] Participant's Budget and/or Transition Budget." Supp. App'x at 9, 15. Allied Resources' CEO avers that Plaintiffs' "rates of pay were established by the DSS." App'x at 79. In response to Defendants' statement of material facts, Plaintiffs "[a]dmit," without qualification, that their "rates of pay were established by the DSS and stated in

6

a budget that Allied [Resources] did not create." *Id.* at 328. And in the Provider Agreement, each Plaintiff acknowledges that "[t]he rate DSS pays for my services . . . through [Allied Resources] . . . is payment in full." *Id.* at 142, 145. The rate-and-method-of-payment factor thus weighs against FLSA employer status.

### d. Employment Records

The parties do not dispute that Allied Resources maintained Plaintiffs' employment records. But "[n]o one of the four [*Carter*] factors standing alone is dispositive." *Herman*, 172 F.3d at 139.

\* \* \*

In sum, no reasonable jury could find that Allied Resources (1) had the power to hire or fire Plaintiffs, (2) supervised and controlled Plaintiffs' work schedules or conditions of employment, or (3) determined Plaintiffs' rates and method of payment. We thus affirm the grant of summary judgment to Allied Resources on the FLSA claim.

## II. Allied Resources' CMWA Employer Status

For similar reasons, the district court correctly granted summary judgment to Allied Resources on the CMWA claim.

The CMWA's definition of "employer" parallels the FLSA's. *Compare* Conn. Gen. Stat. § 31-58(d), *with* 29 U.S.C. § 203(d). But there "is no definitive" Connecticut "appellate court ruling on the meaning of 'employer' under § 31-58(d)." *Rodriguez v. Kaiaffa, LLC*, 2021 WL 4775624, at \*3 (Conn. Super. Ct. Sept. 13, 2021). Some courts in this Circuit "apply the 'economic reality' test that is used in FLSA cases for Connecticut minimum wage claims," *Dixon v. Zabka*, 2014 WL 6084351, at \*19 (D. Conn. Nov. 13, 2014), while others focus on "factors such as whether the alleged employer set the hours of employment, paid wages, exercised control over

day-to-day responsibilities, or ran other daily operations," *Flemming v. REM Conn. Cmty. Servs. Inc.*, 2012 WL 6681862, at \*2 (D. Conn. Dec. 21, 2012) (citing *Butler v. Hartford Tech. Inst.*, 243 Conn. 454, 464-65 (1997)).

Summary judgment for Allied Resources is proper under either set of factors. If the FLSA's economic-reality test governs, no reasonable jury could find Allied Resources to be Plaintiffs' employer, for the reasons discussed above. The result would be the same under the *Flemming* factors. Although Allied Resources paid Plaintiffs' wages, there is no evidence it determined their wages, set Plaintiffs' hours of employment, exercised control over Plaintiffs' day-to-day responsibilities, or ran other daily operations with respect to Plaintiffs' work as caregivers.

### III. Allied Services' Employer Status

Finally, the district court properly granted summary judgment to Allied Services. Plaintiffs admit they "did not work for Allied Services," Appellants' Br. at 31, and they do not claim Allied Services exercised control over their work. They instead assert that they "interacted with other [caregivers] who may have worked in residential facilities operated by Allied [Services]." *Id.* at 32 (cleaned up). But interactions with people who may have worked in Allied Services' facilities do not make Plaintiffs employees of Allied Services. Plaintiffs also claim that "other putative class members" worked for Allied Services. *Id.* at 31. But Plaintiffs cannot maintain an FLSA collective action or a CMWA Rule 23 class action unless they themselves are Allied Services employees. *See* 29 U.S.C. § 216(b) (permitting FLSA collective action "against any employer" when "employees" sue on behalf of "themselves and other employees similarly situated"); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 518 (2d Cir. 2020) (observing that "the FLSA's 'similarly situated' requirement" is "quite distinct from the

much higher threshold of demonstrating that common questions of law and fact will predominate for Rule 23 purposes") (quotation marks omitted).

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court