Jacintha Pollard v. The New York Methodist Hospital

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

(Argued: September 22, 2016        Decided: June 30, 2017)

Docket No. 15-3231

_____

Jacintha Pollard,

*Plaintiff-Appellant*,

v.

The New York Methodist Hospital,

*Defendant-Appellee*.

_____

Before:

LEVAL and LOHIER, *Circuit Judges*, and KOELTL, *District Judge*.[1]

Plaintiff, who was dismissed from employment by defendant for taking unauthorized leave, appeals from the order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*) granting summary judgment to the defendant dismissing plaintiff's suit brought under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* The Court of Appeals holds that the district court erred in concluding that plaintiff could not, as a matter of law, establish a "serious health condition," so as to qualify for medical leave.

Vacated and remanded.

---

[1] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

ABDUL K. HASSAN, Abdul Hassan Law Group, PLLC, Queens Village, New York, *for Plaintiff-Appellant*.

TRAYCEE ELLEN KLEIN, Epstein Becker & Green, P.C., New York, New York (Adriana S. Kosovych, *on the brief*), f*or Defendant-Appellee*.

LEVAL, *Circuit Judge*:

Plaintiff, Jacintha Pollard, who was dismissed from employment by defendant, The New York Methodist Hospital ("Hospital"), for taking unauthorized leave, appeals from an order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*) granting summary judgment in favor of the Hospital. Pollard brought this action pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA" or the "Act"), alleging the Hospital terminated her illegally for taking medical leave to which she was entitled under the terms of the Act. The district court concluded that the Hospital was entitled to judgment as a matter of law because Pollard could not prove a "serious health condition." We disagree and therefore vacate the judgment.

**Background**

From September 6, 2000 until April 1, 2013, Pollard was employed by the Hospital as a medical records file clerk, a job requiring that she stand and walk for most of the day. Sometime between January and February 2013, she noticed a growth on her left foot. The growth became increasingly painful and, to a contested degree, limited her ability to perform her job.

On March 19, 2013, during her lunch break from work, Pollard visited her podiatrist, Dr. Manoj Sadhnani. Dr. Sadhnani concluded, after the preliminary examination, that the growth was a benign soft tissue mass and offered Pollard two options: surgery or conservative care. Dr. Sadhnani recalled that Pollard rejected the conservative option, to which he responded, "[W]ell, then I have to remove it. [Pollard] said, okay, then do it as soon as you can." J.A. at 299. Dr. Sadhnani scheduled surgery to remove the growth for March 28, 2013, the next available opening in his surgery calendar.

During the March 19 appointment, Pollard requested that Dr. Sadhnani provide a note to establish her entitlement to medical leave. Dr. Sadhnani faxed a note to the Hospital that day, stating that Pollard needed immediate surgery on her left foot, which he had scheduled for March 28, 2013.

At his deposition, Dr. Sadhnani said the surgery was immediately necessary. He explained that the growth needed urgent care given (1) Pollard's increasing pain; (2) the obstruction of her function; and (3) the possibility that the growth might be precancerous, which could be better determined by removing it. J.A. at 230-60. While acknowledging that Pollard's condition was not life-threatening, so that the surgery could have been delayed for thirty days, Dr. Sadhnani testified that he would have recommended against such a delay. He acknowledged that more conservative treatments would have been appropriate initially, but in light of Pollard's rejection of conservative treatment, Dr. Sadhnani opined that the surgery was necessary, and "[he] wanted to do it as soon as [he] could possibly do it to alleviate the pain." J.A. at 299.

Following her March 19 appointment, Pollard returned to work and spoke with Velta Davis—the assistant to the Hospital's leave specialist, Mabel Del Rio—to request FMLA leave for her March 28 surgery and post-operative recovery. The Hospital responded by letter dated March 19, 2013, that the FMLA required thirty days' notice of an employee's leave when that leave is foreseeable.

4

On March 26, 2013, Dr. Sadhnani followed up with the Hospital, certifying on an FMLA medical form that: (1) the growth on Pollard's left foot was a "serious health condition"; (2) the "treatment[] given as a result of the health condition" would be "surgery on 3/28/13"; and (3) in light of Pollard's serious health condition, she required medical leave from March 28-April 18, 2013. J.A. at 71-72. The Hospital's leave specialist, Del Rio, immediately responded by fax, notifying Dr. Sadhnani that Hospital employees must provide at least thirty days' notice of their FMLA leave, and requesting that he therefore defer the March 28 surgery to April 19 at the earliest. Pollard did not authorize the Hospital to cancel or change her surgery date.

Upon receipt of this notice from the Hospital, Dr. Sadhnani canceled the March 28 surgery appointment. He testified that while the surgery was medically necessary at some point, it did not need to occur on March 28. However, Dr. Sadhnani then, at Pollard's request, reinstated the March 28 surgery date. At no point did the Hospital request that Pollard submit to an independent medical examination for a second opinion regarding her condition or the medical necessity of her surgery.

5

While Pollard continued to work through March 27, 2013, the day before the surgery, the parties dispute the difficulty she experienced during this period. Pollard claims she was in considerable pain, making it difficult to perform her job and rendering surgery necessary as soon as possible. The Hospital contests this characterization, noting that Pollard never exhibited difficulty performing her job, nor asked for an accommodation or otherwise indicated to the Hospital the difficulty she allegedly experienced. Dr. Sadhnani did not prescribe medication for Pollard's pain in advance of her surgery, nor did Pollard request that Dr. Sadhnani or any other doctor provide pain medication.

On March 28, 2013, Dr. Sadhnani performed the surgery. Because of Pollard's failure to report to work that day, the Hospital terminated her employment by letter dated April 1, 2013.

According to the post-operation report, on March 28, Dr. Sadhnani removed the growth, dressed the wound, and transferred Pollard to a recovery room. He instructed Pollard to wear a surgical shoe on her left foot, and prescribed pain killers and antibiotics.

Dr. Sadhnani instructed Pollard to visit him again in one week. As the earliest available appointment on his schedule was nine days after the surgery,

Pollard returned for a post-operative evaluation on April 6, 2013, during which Dr. Sadhnani examined the wound and changed the dressing. Dr. Sadhnani requested another follow-up visit on April 13, 2013, at which time he removed Pollard's sutures, again changed the dressing, and cleared Pollard to return to work beginning April 18, 2013. Between her surgery date and April 18, 2013, Pollard did not return to work. Dr. Sadhnani testified that he generally preferred that foot-surgery patients not return to work until their sutures had been removed, which usually required a two week absence. Pollard testified that as of April 18, 2013, she was "ready, willing and able" to resume her employment with the Hospital. J.A. at 46.

Because of her termination, Pollard applied to the New York State Department of Labor for unemployment insurance benefits. The Hospital objected, arguing that she was not entitled to benefits because she had been terminated for cause for failing to provide thirty days' notice in advance of her planned leave. An administrative law judge upheld the Department of Labor's grant of unemployment benefits to Pollard, reasoning that Pollard notified the Hospital "as soon as was practicable." J.A. at 85.

**Procedural History**

Pollard brought this suit seeking reinstatement and damages, alleging the Hospital terminated her for taking leave to which she was entitled under the FMLA, and unlawfully interfered with her FMLA rights.

At the close of discovery, the Hospital moved for summary judgment, arguing, *inter alia*, that (1) the growth on Pollard's left foot did not constitute a "serious health condition" under the FMLA, and (2) Pollard failed to provide the notice the Hospital contends was required by the FMLA.

Pollard cross-moved for summary judgment, arguing that the growth on her left foot constituted a "serious health condition" and that she provided adequate notice. She contended, in addition, that the Hospital was estopped from contesting her FMLA claim because (1) the Hospital never obtained a second independent medical opinion to contradict the opinion that she had a "serious health condition," and (2) the Hospital's contention that Pollard's notice was legally insufficient had been rejected in prior proceedings before the New York State Department of Labor.

The district court denied Pollard's motion for summary judgment and granted summary judgment in favor of the Hospital. The court rejected Pollard's

estoppel arguments and held that because "the uncontroverted evidence in the record . . . is insufficient to establish a serious health condition under the FMLA," Pollard had failed to establish an FMLA claim. Because the court granted judgment to the Hospital on a different ground, it did not address the Hospital's contention that Pollard's notice of leave was insufficient.

Judgment was entered in favor of the Hospital. Pollard brought this appeal.

**Discussion**

We review an order granting summary judgment de novo, "assessing whether the district court properly concluded that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While "conclusory statements or mere allegations [are] not sufficient to defeat a summary judgment motion," *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002), "the court is required to resolve all

ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997).

## I. **FMLA Eligibility**

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition." 29 U.S.C. § 2612(a)(1)(D). An eligible employee, upon return from such leave, is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced," or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)-(B).

The Act furthermore provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To succeed on a claim of FMLA interference, a plaintiff must establish: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she

gave [timely] notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

The parties dispute the third and fourth elements: whether Pollard had a serious health condition that qualified her for FMLA leave, and whether she gave timely notice.

### a. *Statutory eligibility provisions*

The Act defines "serious health condition" as including "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.113(a). The Department of Labor has promulgated regulations setting forth categories of serious health conditions requiring continuing treatment. Pollard contends her case is covered, *inter alia*, under 29 C.F.R. § 825.115(e)(2), which provides,

> (e) Conditions requiring multiple treatments. Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider . . . for: . . .
> > (2) A condition that would likely result in a period of incapacity of more than three

11

consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).

29 C.F.R. § 825.115(e)(2). "Treatment" is defined as including "examinations to determine if a serious health condition exists and evaluations of the condition." 29 C.F.R. § 825.113(c). "Incapacity" is defined as "inability to work, attend school or perform other regular daily activities due to serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

The district court concluded that Pollard's growth could not qualify as a "serious health condition" because it did not require or occasion "multiple treatments." 29 C.F.R. § 825.115(e). In the district court's view, Pollard received treatment for the growth on her left foot only during the visit in which the growth was surgically removed. The district court stated, "[T]he treatment of [Pollard's] condition was complete once the growth was removed from her foot." *Pollard v. The New York Methodist Hosp.*, 134 F. Supp. 3d 681, 695 (E.D.N.Y. 2015). Accordingly, the district court reasoned, "[P]laintiff received only one treatment for the growth on her foot: the surgery on March 28, 2013." *Id.* at 696.

In the district court's view, as we understand it, Pollard's condition in question was the growth on her foot, which was eliminated by the surgery, so

12

that her two post-surgical follow-up visits, at which the doctor examined the wound, changed the dressing, and removed the sutures, did not constitute treatment of the growth, but rather treatment of the wound created by the surgery. Once the growth had been removed, Pollard's "condition" no longer existed, and her subsequent visits to the doctor for care of the surgical wound could not qualify as treatment of a condition that had ceased to exist. *See id.* at 695-96.

We believe this analysis depended on an excessively narrow concept of "treatment" that is not consistent with the regulation. We see no reason why post-surgical change of dressing and removal of sutures does not qualify as part of the treatment of the condition that occasioned the surgery—at least if such postoperative treatment was medically predictable from the outset.[2] The Hospital made no showing that such follow-up visits for treatment of Pollard's wound were not a routinely-expected, reasonably-required part of the surgical treatment of the growth. Accordingly, at least for purposes of the Hospital's motion for summary judgment, Pollard satisfied 29 C.F.R. § 825.115(e)'s requirements of "[c]onditions requiring multiple treatments," and a "period of absence to receive

---

[2] A different conclusion might conceivably follow if the surgery did not predictably call for follow-up, but instead, the need for subsequent visits arose from unexpected complications caused by the surgery.

13

multiple treatments (including any period of recovery therefrom) by a health care provider." 29 C.F.R. § 825.115(e).

This course of multiple treatments thus would qualify as a "serious health condition" under the terms of the regulation if the condition "would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment . . . ." 29 C.F.R. § 825.115(e)(2). As to this element of Pollard's claim, the Hospital failed to show that the growth would not have likely resulted in such a period of incapacity if left untreated. The Hospital contends this was demonstrated by the fact that Pollard worked up to the date of her surgery and testified that she would have continued to work in spite of the pain had Dr. Sadhnani not provided treatment.

These arguments are unsuccessful. The fact that Pollard worked up to the date of her surgery, and testified that she would have continued to work, in pain, had she not received surgery on March 28, does not alter the fact that, according to both Pollard and Dr. Sadhnani, the growth and its concomitant pain were a growing (or expanding) condition. On the Hospital's motion for summary judgment, it needed to show that Pollard lacked evidence "to make a sufficient showing on an essential element of her case with respect to which she [had] the

14

burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Hospital's motion undertook to show that Pollard's condition would not likely have resulted in incapacity had it gone untreated. The Hospital relied on the fact that Pollard worked up to the date of the surgery and said she would have continued to work if no treatment had been given. This evidence, however, did not address, much less demonstrate, how long she could have continued working without treatment had the pain continued to worsen. The Hospital made no showing that the pain, as it worsened, would not have incapacitated Pollard for at least three days.

The Hospital further argues that "there is no evidence in the record to support [Pollard's] contention that the condition . . . would likely result in a period of incapacity of more than three consecutive full calendar days . . . ." App. Ct. Dkt. 54 at 2 (emphasis omitted). Pollard, however, made a showing sufficient to give rise to a "genuine issue" as to whether her condition would have resulted in a period of incapacity of at least three consecutive days. She testified that the lesion was growing and painful and affected her ability to walk, which was essential for her occupation. This testimony was supported by evidence from her doctor about the need for urgent treatment to alleviate the pain. This evidence

15

was sufficient to raise an issue of fact as to whether Pollard's condition would have likely resulted in a period of incapacity of at least three consecutive days. *Cf. Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 838-39 (7th Cir. 2014) (noting that several courts of appeals have held either that "lay testimony combined with medical testimony raises a genuine issue of material fact as to incapacity" or that "lay testimony alone is sufficient to create a genuine issue as to incapacity"). Accordingly, the Hospital failed to show that it was "entitled to judgment as a matter of law" on the ground that Pollard did not have a serious health condition under 29 C.F.R. § 825.115(e)(2).

For these reasons, Pollard was entitled to the denial of the Hospital's motion with respect to 29 C.F.R. § 825.115(e)(2), unless the Hospital prevailed in showing that Pollard failed to give the required notice before going on leave. The notice required before an employee may take FMLA leave "because of a serious health condition," 29 U.S.C. § 2612(a)(1)(D), is governed by 29 U.S.C. § 2612(e)(2), which provides:

> **(2) Duties of employee** In any case in which the necessity for leave [for a serious health condition] . . . is foreseeable based on planned medical treatment, the employee—
>> (A) shall make a reasonable effort to schedule the treatment so as not to disrupt unduly the

16

operations of the employer, subject to the approval of the health care provider of the employee . . . ; and (B) shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave under such subparagraph, except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2).

The Hospital took the position in the district court that Pollard was compelled under this provision to provide at least thirty days' notice of her intention to take leave. Pollard contends that because "the date of the treatment require[d] leave to begin in less than 30 days," she was required to provide only "such notice as [was] practicable." *Id*.

Because the district court granted summary judgment to the Hospital on a different ground, it made no ruling on the timeliness of Pollard's notice. Because we rule that the Hospital otherwise failed to show entitlement to summary judgment on Pollard's right to leave under 29 C.F.R. § 825.115(e)(2), the Hospital's entitlement to summary judgment turns on the adequacy of Pollard's notice. We remand to the district court for determination of this question.

## II. **Estoppel**

Pollard contends the Hospital is estopped, as a matter of law, from challenging her entitlement to FMLA leave because (1) the Hospital never obtained a second independent medical opinion to contradict whether she had a "serious health condition," and (2) the Hospital's argument that Pollard failed to give legally adequate notice was already considered and rejected by the New York State Department of Labor when it granted Pollard unemployment benefits. We disagree with Pollard for substantially the same reasons as the district court.

Pollard's first argument relies on 29 C.F.R. § 825.307(b)(1), which states, in relevant part:

> An employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense. Pending receipt of the second . . . medical opinion, the employee is provisionally entitled to the benefits of the [FMLA] . . . .

29 C.F.R. § 825.307(b)(1).

Pollard interprets this language as requiring an employer to obtain a second medical opinion or else forgo any future opportunity to contest the validity of the employee's original FMLA certification. But the plain language of the regulation is permissive, not mandatory. *Id.* ("An employer . . . *may* require"

18

(emphasis added)). While the Hospital had the right to obtain a second opinion, the regulation does not require the Hospital to have exercised that right before contesting the validity of Dr. Sadhnani's certification indicating the existence of an FMLA-qualifying condition.

In support of her theory, Pollard also cites *Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706 (2d Cir. 2001). In *Kosakow*, we held that an employer was estopped from challenging an employee's eligibility for FMLA leave because the employer, after the employee announced an intention to take FMLA leave, remained silent, thereby misleading the employee into believing that she was protected by the FMLA. *Id.* at 725-26. In Pollard's case, it is undisputed that the Hospital did not remain silent. Upon learning of Pollard's FMLA leave request, the Hospital informed Pollard by letter dated March 19, 2013, that her leave request was not FMLA-compliant. Accordingly, the Hospital did not mislead Pollard. *Kosakow* does not support Pollard's arguments.

Nor is the Hospital estopped from challenging whether Pollard provided adequate notice of her FMLA leave. While an administrative law judge, in upholding the New York State Department of Labor's grant of unemployment insurance benefits to Pollard, did find that Pollard notified the Hospital of her

March 28 surgery "as soon as was practicable," J.A. at 85, New York State Labor Law section 623(2) provides that unemployment insurance decisions do not have preclusive effect in subsequent litigation (subject to certain exceptions that are not applicable here). *See* N.Y. LAB. LAW § 623(2) ("No finding of fact or law contained in a decision rendered pursuant to this article by a referee, the appeal board or a court shall preclude the litigation of any issue of fact or law in any subsequent action or proceeding . . . .").

We have considered Pollard's remaining arguments on appeal and find them without merit.

**Conclusion**

We therefore conclude that the district court (1) erred in holding that Pollard cannot, as a matter of law, establish a "serious health condition" under 29 C.F.R. § 825.115(e)(2), but (2) correctly concluded that the Hospital is not estopped from challenging whether Pollard established the elements of her FMLA interference claim. To determine whether the Hospital is entitled to summary judgment with respect to Pollard's claim under 29 C.F.R. § 825.115(e)(2), the district court must rule on whether Pollard gave adequate

20

notice as required by 29 U.S.C. § 2612(e)(2). In all other respects, the court's rulings challenged on appeal are affirmed.

The judgment of the district court is vacated, and the case remanded for further proceedings.