*Saji v. Nassau University Medical Center*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of January, two thousand eighteen.

Present:
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> EDWARD R. KORMAN,
> > *District Judge*.*

---

ROSAMMA SAJI,

> *Plaintiff-Appellant*,

> v.                                                          17-878

NASSAU UNIVERSITY MEDICAL CENTER,

> *Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | THOMAS RICOTTA, Ricotta & Marks, P.C., Long Island City, NY. |
| For Defendant-Appellee: | NICHOLAS M. REITER (Brian J. Clark, *on the brief*), Venable LLP, New York, NY. |

---

* Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Rosamma Saji ("Saji") appeals from a February 28, 2017 judgment of the United States District Court for the Eastern District of New York, disposing of her suit after a partial grant of the defendant's motion for summary judgment under Federal Rule of Civil Procedure 56, and a grant of the defendant's motion for reconsideration under Federal Rule of Civil Procedure 59(e). Saji—a woman of Indian descent—filed this suit against the Nassau University Medical Center ("NUMC"), a public teaching hospital located in Nassau County, New York.[1] Saji claims, *inter alia*, that NUMC discriminated against her on the basis of national origin, and retaliated against her due to her opposition to NUMC's alleged discriminatory practices. She seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

*A. Standard of Review*

"We review a district court's grant of summary judgment de novo, 'resolving all ambiguities and drawing all reasonable factual inferences in favor of the party against whom summary judgment is sought.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (internal brackets omitted) (quoting *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of

---

[1] NUMC is a part of the Nassau Health Care Corporation, a New York State public benefit corporation.

law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). As a result, "reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). A court may grant a motion for summary judgment if, "even after drawing all inferences in the light most favorable to [the plaintiff], no reasonable jury could have issued a verdict in [her] favor." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).

We review a district court's decision to grant a Rule 59(e) motion for abuse of discretion. *See Gomez v. City of New York*, 805 F.3d 419, 423 (2d Cir. 2015) (per curiam). But when a Rule 59(e) motion results in the grant of a motion for summary judgment, we review the merits of the district court's decision *de novo*. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 739 n.21 (2d Cir. 2010); *Lowrance v. Achtyl*, 20 F.3d 529, 534 (2d Cir. 1994).

### B. Saji's Claim of Retaliation for NUMC's Failure to Re-Hire

Saji first argues that the district court erred in granting summary judgment to NUMC on her claim that NUMC failed to re-hire her as a form of retaliation for her March 28, 2012 letter. We evaluate retaliation claims under Title VII and the NYSHRL using the three-step "burden-shifting evidentiary framework" outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015); *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.,* 716 F.3d 10, 14 (2d

3

Cir. 2013) ("The standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL."). At step one, the plaintiff bears the burden of establishing "a *prima facie* case of retaliation." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). A plaintiff does so by demonstrating four elements: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). The plaintiff's burden at this stage is "*de minimis*." *Id.* (quoting *Jute*, 420 F.3d at 173). If the plaintiff successfully establishes a *prima facie* case of retaliation, a "presumption of retaliation" arises. *Id.* (quoting *Jute*, 420 F.3d at 173). To rebut this presumption (*i.e.,* step two), the defendant must "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (quoting *Jute*, 420 F.3d at 173). If the defendant does so, then the burden shifts back to the plaintiff. *See id.* At this point (*i.e.,* step three), the plaintiff must show that the reason offered by the employer is merely pretext, and that the employer's "desire to retaliate" was the actual "but-for cause of the challenged employment action." *Ya–Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013)). If the plaintiff fails to do so, her claims are dismissed. *See id.*

The district court initially determined that a genuine dispute of material fact existed at step three. It noted that NUMC had posted a position for an RN-IV—and removed that post—just weeks after Saji sent her letter, and that NUMC hired a full-time RN-IV on October 9, 2012, a mere six months later. It accordingly held that "the temporal proximity between the protected activity and the adverse action is such that a reasonable trier of fact could conclude, by a fair preponderance of the evidence, that notwithstanding the non-retaliatory reasons proffered

by [NUMC], [Saji] would have been rehired if not for her complaint of discrimination." Special App'x at 38.

After NUMC filed a Rule 59(e) motion for reconsideration, however, the district court determined that it erred in two ways. First, it failed to consider that Saji herself conceded that she was unqualified for the October 9, 2012 full-time RN-IV position. Next, and after setting aside the October 9, 2012 evidence as "neutral" for this reason, the district court concluded that Saji's entire case consisted of the "temporal proximity" between her March 28, 2012 letter and the April 2012 job posting and removal. Special App'x at 49. Correctly recognizing that "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013), the district court held that Saji failed to raise a genuine issue of material fact as to whether her March 28, 2012 letter was the "but-for" cause of NUMC's failure to re-hire her in April 2012.

Saji raises two objections to the district court's reasoning, neither of which has merit. First, Saji alleges that although NUMC never *directly* filled the full-time RN-IV job posting from April 16, 2012, NUMC did *indirectly* fill the posting by hiring multiple *per diem* RN-IVs. Saji's only source for this proposition, however, is her own conclusory allegation in an affidavit she submitted to the district court. *See* Br. for Pl.-Appellant at 24 (citing App'x at 168, ¶ 24). She offers no evidence to support the allegation, and after searching the record we could not find any such evidence. *See Jeffreys,* 426 F.3d at 554 (explaining that a party "may not rely on conclusory allegations or unsubstantiated speculation" to oppose a motion for summary judgment (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted))). Even if her allegation were true, however, Saji articulates no convincing reason to believe that her March 28, 2012 letter was the "but-for" cause of NUMC's decision. *See Ya–*

5

*Chen Chen*, 805 F.3d at 70. If anything, the fact that NUMC ultimately replaced a full-time RN-IV position with multiple *per diem* RN-IV positions would support NUMC's contention that Saji's letter had no connection to its decision not to re-hire her. Saji does not dispute that unlike permanent RN-IVs, *per diem* RN-IVs are hired on an "as-needed" basis and receive no salary. The evidence would therefore strongly suggest that NUMC decided to forgo a full-time RN-IV in favor of multiple *per diem* RN-IVs as a cost-saving measure. Indeed, NUMC explained to the district court that the Nassau Health Care Corporation had specifically instructed NUMC to eliminate a permanent RN-IV position, and Saji has failed to put forward evidence to rebut this contention. At the very least, no reasonable jury could be persuaded that NUMC would have re-hired Saji—less than two months after firing her—"but for" her letter. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Second, Saji argues that her case turns on questions of NUMC's intent, a factual issue "which inherently requires a credibility determination by the jury." Br. for Pl.-Appellant at 24. But to defeat a motion for summary judgment, Saji "must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys*, 426 F.3d at 554 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, she "must offer some hard evidence showing that [her] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998). Saji has failed to do so, and the district court therefore correctly granted NUMC's motion for summary judgment on her "failure-to-hire" retaliation claim.

### C. Saji's Claim of Retaliation for NUMC's Failure to Agree to the Union Stipulation

Saji also argues that she raised a genuine issue of material fact as to whether, in retaliation for her March 28, 2012 letter, NUMC reneged on an agreement to expunge a disciplinary charge from her employment record. The district court determined that NUMC's decision "not to finalize the settlement agreement" that would have expunged Saji's disciplinary charge was not an "adverse employment action." Special App'x at 34. The court explained that Plaintiff was "no longer employed at the time of the March 26, 2012 meeting at which the tentative agreement was negotiated, and NUMC's decision not to execute the agreement in no way affects Plaintiff's reputation or future employment." *Id.* at 34. Saji argues that the district court's analysis was faulty, because NUMC's decision not to expunge the disciplinary charge *did* affect her reputation and potential future employment. *See, e.g.*, *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011) (explaining that Title VII's antiretaliation provision "must be construed to cover a broad range of employer conduct"); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997) (noting that an individual who has been notified that she has been terminated still retains the protections of Title VII).

However, even if we were to accept *arguendo* that reneging on a promise to expunge a disciplinary charge from a terminated employee's personnel file qualifies as an "adverse employment action," we believe that no reasonable jury could find that NUMC made such a promise and then refused to honor it. First, there is no evidence—beyond Saji's own conclusory allegations—that NUMC ever signed the agreement in question. The NUMC representative present at the March 26, 2012 meeting swore under oath that she did not sign it. She explained that the document contained "several errors and omissions"—such as the fact that the agreement provided nothing to NUMC in return for its promise to expunge the disciplinary charge. App'x at

7

55, ¶ 39. Indeed, the record contains a copy of the agreement that was allegedly distributed at the meeting, and the designated space for the NUMC representative's signature is blank. *See id.* at 91. Saji herself admitted that although she saw the NUMC representative sign "some" document, she was not sure it was the agreement. *See id.* at 122, 123. In addition, in May 2012, NUMC provided Saji with an alternative settlement agreement. That agreement explicitly offered to "expunge [Saji's disciplinary charge] and reference thereto from [her] personnel file," as long as Saji waived any claims against NUMC related to the issue. *Id.* at 96–97. It is undisputed that Saji did not sign the alternative settlement agreement, negotiate with NUMC over the agreement, or even propose a counteroffer. On these facts, we do not believe that any reasonable jury could find that NUMC reneged on a promise to expunge Saji's disciplinary charge because of her March 28, 2012 letter, and we therefore affirm the district court's grant of summary judgment on this claim.

### D. Saji's Discrimination Claims

Saji also argues that the district court erred in dismissing her claims that, by disciplining her and firing her, NUMC discriminated against her based on her national origin. We use a similar burden-shifting analysis to evaluate claims of discrimination under Title VII and the NYSHRL as we do for claims of retaliation. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82–83 (2d Cir. 2015). Specifically, to establish a *prima facie* claim of discrimination, the plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* at 83 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). Neither party disputes that Saji's Indian origin places her in a "protected class," that Saji was qualified for her RN-IV position, and that she

suffered an adverse employment action. The parties do disagree, however, on the fourth factor: that is, whether there is a "genuine dispute of material fact" that the circumstances of Saji's employment and termination "give rise to an inference of discrimination."

The fourth factor of the burden-shifting analysis "is a flexible one that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). For example, a plaintiff can put forward evidence of "more favorable treatment of employees not in the protected group." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)). To do so, the plaintiff must show that the comparators in question were "similarly situated to the plaintiff 'in all material respects,'" *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)), including the fact that the comparators "engaged in [similar] conduct" to the plaintiff but were not treated as harshly, *id.* (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)). Although the question of whether two individuals were "similarly situated" for these purposes is often a question for the jury, "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001).

The district court determined—correctly—that Saji failed to carry her *prima facie* burden of demonstrating discrimination. Saji argues that she put forward three pieces of evidence that suffice to show a genuine dispute of material fact on this issue. We are not persuaded. First, Saji argues that the district court failed to consider the fact that two non-Indian RN-IVs engaged in the same conduct as Saji, but nonetheless evaded discipline. Saji's sole evidence to support this claim, however, are her own "conclusory statements [and] mere allegations" in her deposition testimony,

9

which are not enough to defeat a motion for summary judgment. *See Davis*, 316 F.3d at 100. As NUMC correctly notes, Saji never states that she personally observed either of these individuals engaging in the misconduct, nor did she put forward testimony from other witnesses to corroborate her claims. Furthermore, Saji herself admitted in her deposition that she did not believe NUMC's disciplinary action was motivated by discrimination. *See* App'x at 125. In these circumstances, the district court did not err in concluding that Saji failed to raise a genuine dispute of material fact on this issue.

Saji next argues that NUMC's decision to fire Saji instead of firing non-Indian *per diem* RN-IVs raises a question of material fact concerning NUMC's alleged discriminatory intent. But Saji does not genuinely dispute that *per diem* RN-IVs cannot be "fired," since they are paid hourly, receive no salary, and are hired on an "as-needed" basis. *See* App'x at 171. Saji therefore puts forward no concrete evidence to substantiate her claim that the *per diem* RN-IVs were "similarly situated" to her. In any event, Saji's argument neglects the fact that she possessed a disciplinary record and was the subject of multiple complaints. She puts forward no evidence, however, that the *per diem* RN-IVs had similar disciplinary histories. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (noting that the circumstances surrounding the "similarly situated" employees "need not be identical [to the plaintiff's], but there should be a reasonably close resemblance of facts and circumstances").

Finally, Saji argues that the fact that she was selected for termination over Esther Porter ("Porter"), her other permanent RN-IV co-worker, demonstrates NUMC's discriminatory intent. Again, however, Saji fails to establish that she and Porter were sufficiently "similarly situated." Saji puts forward no concrete evidence to rebut NUMC's contention that Porter lacked Saji's sort of disciplinary history. Saji's sole argument on appeal is that she "had a positive record of

performance at NUMC with the only discipline being false and pretextual in nature." Br. for Pl.-Appellant at 34. But an independent arbitrator found that Saji engaged in the conduct for which she was ultimately disciplined, *see* App'x at 102, and Saji fails to raise a "genuine dispute" concerning the other complaints and instances of insubordination during her time at NUMC. Accordingly, the district court did not err in granting NUMC's motion for summary judgment on Saji's discrimination claim.

* * *

We have considered Saji's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.[2]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] Because we agree with the district court that no reasonable jury could have issued a verdict for Saji on the merits, we need not determine whether the district court erred procedurally in granting NUMC's Rule 59(e) motion for reconsideration. *See, e.g.*, *Lee v. Kemna*, 534 U.S. 362, 391 (2002) ("[A]n appellate tribunal may affirm a trial court's judgment on any ground supported by the record.").

11