17-2527-cv
*Russell v. New York University et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of June, two thousand eighteen.

Present:
> PIERRE N. LEVAL,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,

_____

DR. SUZAN M. RUSSELL,

*Plaintiff-Appellant*,

v.                                                                          17-2527-cv

NEW YORK UNIVERSITY, Robert Squillace, Individually and in his capacity as Associate Dean for Academic Affairs, Liberal Studies, Joseph M. Thometz, Individually, and Eve Meltzer, Individually,

*Defendants-Appellees*.

_____

For Plaintiff-Appellant:         CHRISTOPHER J. BERLINGIERI, Berlingieri Law, PLLC, New York, NY (Derek T. Smith, Esq., Derek Smith Law Group, PLLC, New York, NY, *on the brief*).

For Defendants-Appellees:         JOSEPH C. O'KEEFE, Proskauer Rose LLP, Newark, NJ (Mariya Nazginova, Proskauer Rose LLP, New York,

1

NY, *on the brief*), *for* Defendants-Appellees New York University and Robert Squillace, Individually and in his capacity as Associate Dean for Academic Affairs, Liberal Studies.

MARGARET L. WATSON (Anastasia Stylianou, on the brief), McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York, NY, *for* Defendants-Appellees Joseph M. Thometz, Individually, and Eve Meltzer, Individually.

Appeal from a judgment of the United States District Court for the Southern District of New York (Woods, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Dr. Suzan Russell ("Russell") appeals from a July 19, 2017 judgment by the United States District Court for the Southern District of New York, granting Defendants-Appellees New York University ("NYU")'s and Robert Squillace ("Squillace")'s motion for summary judgment under Federal Rule of Civil Procedure 56, and declining to exercise supplemental jurisdiction over the remaining state law claims. Russell filed this suit against two classes of defendants: (1) Squillace, individually and in his capacity as Associate Dean for Academic Affairs, Liberal Studies, and NYU (together, the "NYU Defendants"); and (2) Joseph Thometz ("Thometz") and Eve Meltzer ("Meltzer"), individually (together, the "Individual Defendants"). Russell alleges that both classes of defendants caused her to suffer discrimination and harassment because of her gender, sexual orientation, religion, and age, and that the NYU Defendants retaliated against her for engaging in protected conduct. Her brief on appeal challenges only the district court's dismissal of her hostile work environment claim against the NYU Defendants pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the district court's dismissal of her Title VII

2

retaliation claim against the NYU Defendants. We therefore limit our review to those claims. *See Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 n.1 (2d Cir. 2011); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## A. Standard of Review

"We review *de novo* the award of summary judgment, 'constru[ing] the evidence in the light most favorable to the [nonmoving party]' and 'drawing all reasonable inferences and resolving all ambiguities in [its] favor.'" *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017)). "Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)). Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (quoting *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996)).

## B. Hostile Work Environment

We first address Russell's hostile work environment claim. To prevail on a hostile work environment claim under either Title VII or the ADEA, "a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir.

2009)); *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "Here, we need not and do not determine whether [Russell's] showing of harassment was sufficiently severe or pervasive to constitute a hostile work environment," because we agree with the district court that "the conduct in this case cannot be imputed to" the NYU Defendants. *See Summa*, 708 F.3d at 124. "In a situation such as this, 'when the harassment is attributable to a coworker, rather than a supervisor, . . . the employer will be held liable only for its own negligence.'" *Duch*, 588 F.3d at 762 (quoting *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998)).[1] Thus, Russell must establish either that: (1) the NYU Defendants "failed to provide a reasonable avenue for complaint," or (2) that the NYU Defendants "knew . . . about the harassment yet failed to take appropriate remedial action." *Id.* (quoting *Howley v. Town of Stratford,* 217 F.3d 141, 154 (2d Cir. 2000)); *see also Distasio*, 157 F.3d at 65 ("An employer that has knowledge of a hostile work environment has a duty to take reasonable steps to remedy it."). Russell does not—and cannot—contend that the NYU Defendants "failed to provide a reasonable avenue for complaint," because Russell took advantage of NYU's robust internal complaint system numerous times during the period in question. *See Duch*, 588 F.3d at 762–63. Rather, Russell insists that the NYU Defendants' efforts to remedy the harassment fell below an objective standard of reasonableness. We agree with the district court that no reasonable jury could find for Russell on this issue.

"The appropriateness of an employer's remedial action" in response to an employee's complaint of a co-worker's harassment "must 'be assessed from the totality of the circumstances.'" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014) (quoting *Distasio*, 157 F.3d at

---

[1] Like the district court, we make no findings of fact concerning the extent to which Russell's co-workers were indeed responsible for the online impersonations and unsolicited mail at issue in this case. Because Russell's claims would fail even if—as she alleges—her co-workers *were* responsible for the conduct at issue, we will simply assume *arguendo*, and solely for purposes of disposing of this appeal, the truth of Russell's allegations as to this point.

65). An employer cannot be subject to a hostile work environment claim, however, if the "employer has in good faith taken those measures which are both feasible and reasonable under the circumstances to combat [the] offensive conduct." *Snell v. Suffolk Cty.*, 782 F.2d 1094, 1104 (2d Cir. 1986) (quoting *DeGrace v. Rumsfeld*, 614 F.2d 796, 805 (1st Cir. 1980)). We conclude that no reasonable jury could find that the NYU Defendants failed to, "in good faith[,] take[] those measures which are both feasible and reasonable under the circumstances." *Id.* The record strongly suggests that "[e]ach complaint that [Russell] brought directly to [the NYU Defendants'] attention was dealt with quickly and in proportion to the level of seriousness of the event." *Summa*, 708 F.3d at 125. There is also no genuine dispute that NYU's Office of Equal Employment ("OEO") undertook an internal investigation into the harassment, and that the NYU administration—among other things—checked the IP addresses that Russell provided them to discover whether Russell's anonymous harasser possessed a connection to NYU. Finally, there is no genuine dispute that the NYU administration attempted to engage directly with the Manhattan District Attorney ("DA")'s Office on Russell's case. Indeed, if anything, the NYU Defendants invested *more* effort into investigating Russell's harassment than Russell herself would have liked: Russell repeatedly informed the NYU Defendants to cease contacting the DA's Office for information about her case, because such information in her view was "confidential" and "not [their] business." App'x at 22, 24. In short, any reasonable jury would conclude that once the NYU Defendants "ha[d] knowledge of a" discriminatory "atmosphere in the workplace," they fulfilled their "duty to take reasonable steps to eliminate it." *See Snell*, 782 F.2d at 1104.

On appeal, Russell suggests three reasons for why the NYU Defendants failed to take reasonable measures to end her harassment. We reject all three. First, Russell argues that "[a] reasonable juror could find that the NYU response was inadequate because NYU could have easily

done more." Reply Br. for Pl.-Appellant at 12–13. But "[a]n employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting [the] harassing conduct." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 72 (2d Cir. 2000) (quoting *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999)). There is only so much that NYU—a private university lacking the subpoena power of a government agency—can do to investigate misconduct. *See Snell*, 782 F.2d at 1104 (explaining that courts should take into account "the resources available to the employer" when evaluating whether an employer's response to co-worker harassment is "reasonable"). Second, Russell argues that she provided NYU with the names of five professors whom she suspected of being responsible for the harassment, and NYU failed to single out each of these professors and "warn" them. But as the district court correctly concluded, Russell "provides no legal support for the proposition that NYU had a duty to take particular steps against particular individuals based solely on her speculative say-so." App'x at 48. That is especially the case given that, on multiple occasions, Russell expressly told NYU *not* to engage her co-workers until receiving further approval from the Manhattan DA's Office. *See Summa*, 708 F.3d at 124 ("In determining the appropriateness of an employer's response, we look to whether the response was 'immediate or timely and appropriate *in light of the circumstances* . . . .'" (emphasis added) (quoting *Crist v. Focus Homes, Inc.,* 122 F.3d 1107, 1111 (8th Cir. 1997))). Finally, Russell argues that, despite her expressly telling NYU not to investigate her harassment further, "they were under a legal duty to continue their investigation." Br. for Pl.-Appellee at 31. The record indicates, however, that the NYU Defendants *did* continue their investigation despite Russell's protestations to the contrary: the OEO continued its internal investigation until February 2014, and NYU attempted to reach out to the DA's office multiple times to gather additional information. Indeed, the record suggests that

6

Russell was not the only victim of harassment at NYU during the relevant period: multiple staff members reported being subject to a similar campaign of unsolicited mail, including NYU's Dean of Liberal Studies, and NYU had a motive to uncover the source of the harassment even apart from Russell's complaints. In sum, "[o]nce [the NYU defendants] knew or should have known about the harassing behavior, [they] had a remedial obligation to address and end the harassment." *Summa*, 708 F.3d at 124. We conclude, as did the district court, "that [the NYU defendants] met [their] obligation." *Id.*[2]

## C. Retaliation

We next address Russell's Title VII retaliation claim. We evaluate retaliation claims under Title VII using the three-step framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). First, the plaintiff must establish "a *prima facie* case of retaliation." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). A plaintiff does so by demonstrating: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). If the plaintiff successfully establishes a *prima facie* case of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (quoting *Jute*, 420 F.3d

---

[2] In her reply brief, Russell claims that we should remand to the district court in light of *Zarda v. Altitude Express*, Inc., 883 F.3d 100 (2d Cir. 2018) (en banc), in which we held that Title VII's prohibition of discrimination "because of . . . sex" also applies to discrimination on the basis of sexual orientation, *see id.* at 108. We fail to see, however, why an employer's duty under Title VII to address harassment based on sexual orientation should be any different than an employer's duty to address harassment based on gender—especially given that, under *Zarda*, *both* forms of harassment are discrimination "because of . . . sex." *See id.*; *see also id.* at 125 (noting that "Title VII . . . 'on its face treats each of the enumerated categories exactly the same' such that 'principles . . . announce[d]' with respect to sex discrimination 'apply with equal force to discrimination based on race, religion, or national origin,' and vice versa." (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244 n.9 (1989) (plurality opinion))).

7

at 173). If the defendant does so, then the burden shifts back to the plaintiff. *See id.* At this point, the plaintiff must show that the "legitimate, non-retaliatory reason" offered by the employer is mere pretext, and that the employer's "desire to retaliate" was the real "but-for cause of the challenged employment action." *Ya–Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70, 73 (2d Cir. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2528 (2013)). To be actionable, the retaliation must have been the "'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Nassar*, 133 S. Ct. at 2526, 2533).

It is undisputed that Russell engaged in protected activity during the relevant period. It is also undisputed that the NYU Defendants were aware of this protected activity. Russell argues that the NYU Defendants undertook two relevant adverse employment actions against her in response to her protected activity: (1) issuing her a "final written warning" in response to an incident with a Liberal Studies administrative aide (the "Smalls-Smith Incident"); and (2) terminating her after she had sent three emails to a potential witness in this case. As to (1) the final written warning, the NYU Defendants argue on appeal that Russell waived any claim that the "final written warning" constituted an adverse employment action, and that—in any event—Russell has failed to establish a *prima facie* causal connection between these incidents and her protected activity. We need not determine whether either of these objections has merit, because even assuming *arguendo* that Russell has sufficiently preserved (and substantiated) her claim that the "final written warning" constituted an "adverse employment action," and even assuming *arguendo* that Russell has demonstrated a *prima facie* causal connection between the adverse employment actions and her protected activity, her claims would still fail. The NYU Defendants have "articulate[d] a legitimate, non-retaliatory reason for the adverse employment action[s]": namely, Russell's

8

repeated contact with the Liberal Studies administrative aide despite NYU's instructions otherwise, and Russell's unsolicited emails to a potential witness in this case, an action that the district court later concluded was a breach of its protective order. *See Hicks*, 593 F.3d at 164 (quoting *Jute*, 420 F.3d at 173). We conclude that Russell has failed to carry her burden to create a genuine dispute of material fact as to whether the NYU Defendants' justifications are mere pretext, and "the adverse action[s]" complained of "would . . . have occurred in the absence of the retaliatory motive." *See Zann Kwan*, 737 F.3d at 845.

As to (2) Russell's termination, the district court found insufficient Russell's claim that her protected conduct was a but-for cause of NYU's decision to fire her. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Russell submits three pieces of evidence to establish "but-for" causation; we are not persuaded. First, Russell argues that the NYU Defendants failed to "follow[] the progressive discipline steps as outlined in the CBA" before sending her the "final written warning" letter. Br. for Pl.-Appellant at 40. We reject this argument for the same reasons as did the district court: the CBA does not, in fact, "require [such] progressive steps to be followed," and Russell fails to cite to any part of the CBA (or any other relevant document) to substantiate her claim concerning the existence of these "progressive steps." *See Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (per curiam) (noting that an appellant's brief is not an "invitation [for us] to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for appellant" (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112

(2d Cir. 1999) (per curiam))). Second, Russell notes that an independent arbitrator had concluded that her emails to the prospective witness did "not rise to the level that would justify immediate termination under [NYU's] Code of Ethical Conduct and the Constructive Discipline Policy," *see* Dec. of John Luke in Opp'n to Mot. For Summ. J., *Russell v. New York Univ.*, No. 1:15-CV-2185-GHW, 2017 WL 3049534 (S.D.N.Y. July 17, 2017), ECF No. 168-29. But the independent arbitrator *also* concluded that Russell's actions "justi[fied] some discipline," because Russell "obviously understood" that "she should not have violated the [district court's] Confidentiality Order and she should not have engaged in a verbal attack on another faculty member." *Id.*; *see also id.* ("This was a serious issue that required a serious response."). At best, then, the arbitrator's decision suggests only that the *particular* "serious [disciplinary] response" NYU took against Russell might have been too severe, not that its decision to impose serious discipline on her was unwarranted. In the context of this case, where Russell has not pointed to any other evidence of pretext or retaliatory animus, therefore, the arbitrator's decision does not suffice to create a genuine dispute over the NYU Defendants' subjective motivations for terminating Russell. *See Chen*, 805 F.3d at 73 ("Title VII is not an invitation for courts to 'sit as a super-personnel department that reexamines' employers' judgments." (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (per curiam))). Finally, Russell cites the temporal proximity between her protected conduct and the adverse employment actions. But it is well-settled in our Circuit that "temporal proximity alone is not enough to establish pretext," *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014), and thus Russell's efforts to point to "[t]emporal proximity alone is insufficient to defeat summary judgment," *Zann Kwan*, 737 F.3d at 847. Accordingly, we affirm the district court's dismissal of Russell's retaliation claim.

\* \* \*

10

We have considered Russell's remaining arguments and find them to be without merit.[3]

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[3] We decline Thometz's and Meltzer's invitation to strike Russell's brief for failure to comply with Federal Rule of Appellate Procedure 28. *See, e.g.*, *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004) (noting that we have discretion to decide whether to strike a brief for failure to comply with Rule 28).